DECISION
{¶ 1} Relator, Kokosing Construction Company, Inc., has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Ohio Bureau of Workers' Compensation, to vacate its decision that denied relator's request for reimbursement from the state surplus fund and to enter a decision granting such reimbursement.
¶ 2 This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided the requested writ of mandamus should be granted. Respondent has filed objections to the magistrate's decision.
¶ 3 In its objections, respondent argues that State ex rel. Sysco Food Serv. of Cleveland, Inc. v. Indus. Comm. (2000), 89 Ohio St.3d 612, only required the self-insured employer to be reimbursed from the state surplus fund when the claim has been disallowed as the result of what respondent has categorized as a "straight line appeal."
¶ 4 In this case, claimant, Gregory D. Neff, allegedly suffered a work-related injury in 1992, and, in 1993, a district hearing officer awarded temporary total disability compensation. Relator appealed the order, which was affirmed by a regional board of review and a staff hearing officer. Apparently, no other appeal was taken. In 1997, relator moved to decertify the claim based on an allegation of fraud. A district hearing officer made no decision on the request to decertify the claim, but set the matter for a hearing citing the Industrial Commission's continuing jurisdiction pursuant to R.C. 4123.52. Before the hearing took place, claimant's wife, acting as his legal guardian, and relator executed an agreement that stated the claim was fraudulent, as claimant had never suffered an injury. In October 1997, a staff hearing officer issued an order based on the agreement and the claim was disallowed and an overpayment was declared.
¶ 5 Three years later, the Ohio Supreme Court decided Sysco. In Sysco, an employee claimed an injury to his lower back. The self-insured employer, Sysco, contested the claim which was ultimately allowed by the Industrial Commission and Sysco was ordered to pay temporary total disability compensation. Sysco pursued its appeal and the Eighth District Court of Appeals affirmed a decision of the Cuyahoga County Court of Common Pleas disallowing the claim. Sysco's claim for reimbursement from the surplus fund was denied by the Industrial Commission. The Supreme Court held that R.C. 4123.512(H) entitled the self-insured employer to be reimbursed for payment made on a claim that was later disallowed.
¶ 6 Citing Sysco, relator requested reimbursement from the state surplus fund for approximately $135,000 paid to claimant. Respondent's self-insured review panel denied the claim on the basis that:
 * * * The Sysco case restores surplus fund reimbursement as a remedy for self-insuring employers for situations involving a `straight line appeal', when the employer successfully appeals an Industrial Commission order. The Panel finds that the Sysco case does not require reimbursement when a self-insuring employer initially pays compensation, with or without dispute, and later obtains additional information causing it to second-guess the propriety of the payment, or raise a new dispute unrelated to the original dispute. * * *
 ¶ 7 We agree with the magistrate's conclusion that, while the proceedings in Sysco resulted from the employer's appeal of its employee's right to participate in the workers' compensation fund, nothing in Sysco or R.C. 4123.512(H) limits their application to such proceedings. R.C.4123.512(H) provides, in part:
 * * * If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34 of the Revised Code. * * *
 ¶ 8 To accept respondent's interpretation of Sysco and R.C.4123.512(H) would require us to rewrite the statute to read, in part:
 If, in a final administrative or judicial action following an appeal, it is determined * * *.
While rewriting the statute is the prerogative of the General Assembly, it is not a prerogative of this court. The October 1997 order is a final administrative action within the meaning of R.C. 4123.512(H), and relator is entitled to reimbursement from the state surplus fund.
¶ 9 Therefore, for the foregoing reasons, respondent's objections to the magistrate's decision are overruled. This court grants a writ of mandamus to order respondent, Ohio Bureau of Workers' Compensation, to vacate its decision that denied relator's request for surplus reimbursement in the claim of Gregory D. Neff, and to enter a decision granting such reimbursement from the state surplus fund.
Objections overruled, writ of mandamus granted.
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 10} In this original action, relator, Kokosing Construction Company, Inc., requests a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation ("bureau") to vacate its decision denying relator's request for surplus fund reimbursement in the industrial claim of Gregory D. Neff, and to enter a decision granting relator surplus fund reimbursement.
Findings of Fact:
 {¶ 11} 1. On June 11, 1992, relator, a self-insured employer under Ohio's workers' compensation laws, certified a workers' compensation claim that was filed by its employee Gregory D. Neff ("Neff"). Neff alleged in his workers' compensation application that he had sustained an industrial injury on March 9, 1992. On the application, Neff claimed that he had ruptured a disc when he "slipped down the roof and was caught by my safety lanyard."
 {¶ 12} 2. On November 6, 1992, Neff filed a motion which the commission construed as a request to set average weekly wage ("AWW") and full weekly wage ("FWW") and a request for payment of temporary total disability ("TTD") compensation. On November 23, 1992, relator filed an "objection" which the commission construed as a request to clarify the allowed conditions in the claim.
 {¶ 13} 3. Following a February 19, 1993 hearing, a district hearing officer ("DHO") issued an order setting AWW and FWW and awarding TTD compensation beginning December 3, 1992. The DHO also clarified the allowed conditions of the claim finding no medical evidence to support a ruptured disc, but allowing the claim for " `lumbosacral sprain/strain; aggravation of pre-existing degenerative disc disease at L2-3, L3-4, L4-5, L5-S1 and aggravation of pre-existing herniated disc at L5-S1'."
 {¶ 14} 4. Relator administratively appealed the DHO's order of February 19, 1993. Following a May 7, 1993 hearing, a regional board of review issued an order affirming the DHO's order.
 {¶ 15} 5. Relator administratively appealed the regional board's order. Following an August 11, 1993 hearing, two commission staff hearing officers issued an order affirming the regional board's order.
 {¶ 16} 6. Apparently, relator did not appeal the August 11, 1993 staff hearing officers' order to a court of common pleas pursuant to former R.C. 4123.519.
 {¶ 17} 7. On April 25, 1997, relator moved to decertify the industrial claim on grounds that Neff had given statements to the Federal Bureau of Investigation ("FBI") and later to bureau officials indicating that he had falsely claimed an injury at Kokosing.
 {¶ 18} 8. Following a May 28, 1997 hearing, a DHO, citing the commission's continuing jurisdiction over industrial claims under R.C.4123.52, granted relator's request to withdraw its certification of the claim. The DHO relied upon Neff's statement to the FBI and the bureau's subsequent investigation. However, the DHO made no determination regarding the allowance or disallowance of the claim but indicated that the uncertified claim would be set for hearing on the "allowance docket."
 {¶ 19} 9. Relator and Neff administratively appealed the DHO's order of May 28, 1997.
 {¶ 20} 10. On July 17, 1997, the Stark County Probate Court entered judgment appointing Neff's spouse, Karla K. Neff, to be his legal guardian.
 {¶ 21} 11. On September 26, 1997, Karla Neff executed an agreement on behalf of herself and Gregory Neff. Relator executed the agreement on October 9, 1997. By the agreement, the parties stipulated:
 {¶ 22} "(1) The parties to claim no. L208786-22 will stipulate that allowance of the claim should be overturned and the claim denied on account of its being fraudulent;
 {¶ 23} "(2) The parties to the claim will stipulate that the accident which is the subject of the claim, the one alleged on March 9, 1992, did not occur;
 {¶ 24} "(3) On the basis of these stipulations, Mr. Neff agrees not to oppose a declaration of overpayment by the Industrial Commission with respect to the amounts of compensation and benefits paid in this claim;
 {¶ 25} "(4) Mr. Neff agrees that he voluntarily relinquishes any possible claim he might have to employment at Kokosing, its subsidiaries, parents, related or affiliated companies and agrees that he will never re-apply for employment at Kokosing, its subsidiaries, parents, related or affiliated companies;
 {¶ 26} "(5) Mr. and Mrs. Neff agree that neither they nor their agents will resist, obstruct or oppose the efforts of Kokosing to have the instant workers' compensation claim denied on account of fraud and have a resultant overpayment declared;
 {¶ 27} "(6) Mr. Neff agrees that in the event he becomes re-employed, then for any week in which he works more than 30 hours he will pay to Kokosing $100 in reimbursement of compensation and benefits he received in this claim until such time as Mr. Neff's $134,856.15 debt for such overpayment is satisfied.
 {¶ 28} "(7) Kokosing agrees that it will not attempt to enforce or execute any judgment against Mr. Neff or Mrs. Neff related to claim no. L208786-22 against the residence at 3959 Baum Rd., S.E., Canton, Ohio in which Mr. and Mrs. Neff now reside; and
 {¶ 29} "(8) Kokosing agrees that its obligations under #7 above are not contingent upon Mr. Neff's performance of his obligations under #6 above but Kokosing's obligations under #7 above are contingent upon the Neffs' performance of their obligations under #'s 1-5 above."
 {¶ 30} 12. Relator submitted the agreement to the commission. On October 30, 1997, a staff hearing officer ("SHO") mailed an "ex parte order" stating:
 {¶ 31} "The Staff Hearing Officer finds that both the employer and the claimant have filed an appeal to the District Hearing Officer order of 5/28/97 and have resolved the issues as outlined in Stipulation and Agreement executed 9/26/97 and 10/9/97 respectively and being part of guardianship proceedings in Probate Court of Stark County, Case No. 166096.
 {¶ 32} "It is found that the injury of 3/9/92, which is the subject of this claim did not occur, was fabricated by the claimant and therefore is fraudulent and disallowed in its entirety. All compensation and benefits paid in the claim are declared an overpayment and such overpayment is to be recouped as outlined in the Stipulation and Agreement in Probate Court Case No. 166096.
 {¶ 33} "The appeals of both the claimant and employer are hereby dismissed."
 {¶ 34} 13. On September 13, 2000, the Supreme Court of Ohio issued its decision in State ex rel. Sysco Food Serv. of Cleveland Inc. v. Indus. Comm. (2000), 89 Ohio St.3d 612.
 {¶ 35} 14. By letter dated August 7, 2001, citing Sysco, relator, through counsel, requested surplus fund reimbursement in the amount of $133,419.26 in the industrial claim of Gregory Neff. In the letter, relator stated that it had received only $400 from Neff pursuant to the agreement.
 {¶ 36} 15. By letter dated November 21, 2001, an underwriting supervisor of the bureau's self-insured department denied relator's request, stating:
 {¶ 37} "Your request for reimbursement has been denied due to the request not being covered under the Ohio Supreme Court Decision of Sysco Food Services of Cleveland, Inc. v. Industrial Commission. In this case the Court allowed reimbursement from the Surplus fund in a claim that was initially allowed by the Industrial Commission and subsequently overturned. In the above-mentioned claim there is not an initial decision issued by the Industrial Commission ordering the Self-Insured employer to pay funds on this claim that was later overturned."
 {¶ 38} 16. Relator administratively appealed the November 21, 2001 denial letter to the bureau's self-insured review panel ("SIRP"). SIRP held a conference on March 12, 2002, at which relator, through counsel, appeared. Thereafter, SIRP issued a written decision that denied relator's request for surplus fund reimbursement. SIRP's decision states in part:
 {¶ 39} "In the Sysco case, the Ohio Supreme Court restored the remedy of reimbursement from the surplus fund to self-insuring employers for amounts paid in claims that are later disallowed on appeal. In implementing the decision, BWC derived its reimbursement policy from the fact pattern presented in the Sysco case. Stated simply, the policy permits reimbursement from the surplus fund for amounts paid by a self-insuring employer pursuant to an Industrial Commission order that is overturned on appeal. Under this policy, BWC's Self-Insured Department has authorized requests for surplus fund reimbursement for `straight line appeals' in which an employer successfully appeals an Industrial Commission order.
 {¶ 40} "* * *
 {¶ 41} "After a review of the statement of facts and testimony presented at the conference, the Panel finds that Sysco does not mandate surplus fund reimbursement under the circumstances described. The Sysco case restores surplus fund reimburse-ment as a remedy for self-insuring employers for situations involving a `straight line appeal', when the employer successfully appeals an Industrial Commission order. The Panel finds that the Sysco case does not require reimbursement when a self-insuring employer initially pays compensation, with or without dispute, and later obtains additional information causing it to second-guess the propriety of the payment, or raise a new dispute unrelated to the original dispute. The Panel finds that it was appropriate for the Self-Insured Department to deny the employer's request for reimbursement from the surplus fund, and the employer's appeal is denied. The Panel further notes that by seeking self-insured status, employers have traditionally sought to obtain more control over their workers' compensation programs by making their own decisions in claims, with the goal of reducing the overall costs of the program. By assuming this responsibility, a self-insuring employer also assumes the risk that a decision in an individual claim may turn out to be wrong. The Panel finds that it is more appropriate to place the risk of such a decision on the individual self-insuring employer, rather than spreading the risk among all of the self-insured employers that contribute to the surplus fund. As a result, the Panel declines to expand BWC's present Sysco policy."
 {¶ 42} 17. Relator appealed the March 12, 2002 decision of SIRP to the administrator's designee. On September 13, 2002, the administrator's designee issued a written decision that approves and affirms the decision of SIRP.
 {¶ 43} 18. On November 12, 2002, relator, Kokosing Construction Company, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 44} It is the magistrate's decision that this court grant a writ of mandamus, as more fully explained below.
 {¶ 45} The instant action arises by virtue of the decision of the Supreme Court of Ohio in Sysco, supra. Because an analysis of the Sysco case is critical to the resolution of this mandamus action, the magistrates begins with a discussion of that case.
 {¶ 46} In 1995, a Sysco employee alleged injury to his lower back arising from and in the course of his employment. Sysco, a self-insured employer, contested the claim, and the matter was heard by a DHO. The commission ultimately allowed the claim and ordered Sysco to pay TTD compensation. Sysco appealed the claim and continued to pay TTD compensation and medical benefits during the course of the proceedings. The claim was ultimately disallowed in its entirety by the Cuyahoga County Court of Common Pleas. The Cuyahoga County Court of Appeals affirmed and no further appeal was taken. Sysco moved the commission for reimbursement from the state surplus fund for the compensation and benefits it had been required to pay in the claim. The commission denied Sysco's request, ruling that Sysco's recovery rights were instead governed by R.C. 4123.511(J) which mandates reimbursement via offset from any future claims made by the claimant.
 {¶ 47} The Sysco court observed that, effective October 20, 1993, Am.Sub.H.B. No. 107 ("HB 107") repealed R.C. 4123.515 and 4123.519, and substituted R.C. 4123.511(J) and 4123.512(H).
 {¶ 48} The Sysco court observed that the repealed statutes had provided dollar for dollar reimbursement via direct payment from the surplus fund to the self-insured employer.
 {¶ 49} The Sysco court observed that R.C. 4123.511(J) provides a graduated withholding schedule that allows the claimant to retain some amount of weekly benefit during the repayment process. The Sysco court found that, unfortunately, R.C. 4123.511(J) offers little relief to the self-insured employer, for it is at best speculative. The entire scheme of R.C. 4123.511(J) hinges on the employee seeking additional compensation that may never occur. Even where additional compensation is sought, the graduated withholding schedule of R.C. 4123.511(J) greatly reduces the chance that the employer will recover the full amount of the overpayment.
 {¶ 50} Sysco argued that to limit it to the recovery scheme of R.C. 4123.511(J) denies it the right to a remedy guaranteed by Section16, Article I, Ohio Constitution. As such, Sysco asserted that R.C.4123.512(H) must be read as preserving the right to surplus fund reimbursement in order to maintain the recovery scheme's constitutionality. The Sysco court agreed.
 {¶ 51} The Sysco court noted that in asserting a post-HB 107 right to surplus fund reimbursement, Sysco relied upon the following language of R.C. 4123.512(H):
 {¶ 52} "* * * If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34
of the Revised Code. * * *"
 {¶ 53} In short, the Sysco court held that self-insured employers do have a post-HB 107 right to surplus fund reimbursement under R.C.4123.512(H) notwithstanding the availability of the R.C. 4123.511(J) graduated recovery scheme.
 {¶ 54} The Sysco court issued a writ of mandamus ordering the commission to grant surplus fund reimbursement to Sysco.
 {¶ 55} According to the bureau, the Sysco's court's holding that self-insured employers have a post-HB 107 right to surplus fund reimbursement must be limited to those cases in which the overpayment results from a so-called "straight line appeal" because it was a "straight line appeal" that created the overpayment in Sysco.
 {¶ 56} Here, unlike Sysco, relator certified the claim. Relator did not obtain a disallowance of the claim through an appeal of the claim allowance as occurred in Sysco. Rather, relator obtained a decertification of the claim by moving the commission to exercise its continuing jurisdiction under R.C. 4123.52.
 {¶ 57} In the magistrate's view, while Sysco's claim to surplus fund reimbursement did arise on a so-called "straight line appeal," there is nothing in the opinion of the Sysco court to indicate that surplus fund reimbursement is limited only to overpayments generated by a "straight line appeal."
 {¶ 58} Presumably, the Sysco court granted surplus fund reimbursement because Sysco satisfied R.C. 4123.512(H)'s requirements. That Sysco satisfied R.C. 4123.512(H)'s requirements by obtaining an overpayment via a "straight line appeal" does not necessarily preclude satisfaction of R.C. 4123.512(H)'s requirements via the exercise of the commission's continuing jurisdiction over an industrial claim.
 {¶ 59} The magistrate finds nothing in the language of R.C.4123.512(H) nor the opinion of the Sysco court that should preclude surplus fund reimbursement for overpayments resulting from the commission's exercise of its continuing jurisdiction over industrial claims.
 {¶ 60} Again, R.C. 4123.512(H) reads in pertinent part:
 {¶ 61} "* * * If, in a final administrative or judicial action, it is determined that payments of compensation or benefits, or both, made to or on behalf of a claimant should not have been made, the amount thereof shall be charged to the surplus fund under division (B) of section 4123.34
of the Revised Code. * * *"
 {¶ 62} While respondent in this action does not seem to question the finality of the administrative action upon which relator's claim to surplus fund reimbursement is premised, the finality question needs to be addressed here.
 {¶ 63} As previously noted, on relator's motion, a DHO decertified the claim but reserved the issue of allowance or disallowance for further hearing. Both relator and Neff administratively appealed the order. Thereafter, Neff, through his guardian, entered into an agreement with relator whereby Neff stipulated that the claim should not be allowed because it is fraudulent.
 {¶ 64} The hearing on whether the claim should be allowed or disallowed never occurred as ordered by the DHO. Because the parties had agreed that the claim should be disallowed because it is fraudulent, an SHO dismissed the administrative appeals in an ex parte order. The SHO's dismissal of the appeals has the effect of letting stand the DHO's decertification of the industrial claim.
 {¶ 65} Under the circumstances, the DHO's order of May 28, 1997 is a final commission order that decertifies the claim. While compensation and benefits can be paid on an uncertified claim in the event that the claim is allowed by the commission, here, the parties have agreed that the claim shall not be allowed and the commission, through its ex parte order, has recognized the validity of the agreement.
 {¶ 66} In the magistrate's view, a final administrative order decertifying the claim coupled with commission recognition of the agreement that the claim is fraudulent is in effect a final administrative action that has determined that payments of compensation or benefits or both should not have been made. In fact, the commission's declaration of an overpayment in its ex parte order at least implicitly recognizes the finality of the parties' agreement to disallow the claim.
 {¶ 67} Accordingly, the magistrate finds that relator has satisfied the statutory requirements under R.C. 4123.512(H) that there be a final administrative action in which it is determined that payments of compensation or benefits or both should not have been made.
 {¶ 68} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Ohio Bureau of Workers' Compensation to grant relator's request for surplus fund reimbursement.